UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EURO DISMANTLING SERVICES LIMITED                                PLAINTIFF

v.                                                CIVIL ACTION NO 3:09-CV-57-S

NEWBRIDGE DEVELOPMENT LLC, et al.                              DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on two motions related to the parties' settlement agreement. Plaintiff, Euro Dismantling Services Limited ("EDS") moves for entry of an order dismissing all claims based on the settlement by the parties. (DN 17.) In a cross-motion, Defendants, NewBridge Development, LLC ("Newbridge") and The Mardrian Group, Inc., ("TMG"), oppose dismissal and move to enforce a settlement provision which EDS has admittedly failed to perform, i.e., EDS's agreement to obtain an insurance rider on the property at issue. In addition, each party seeks sanctions covering its costs and attorney's fees incurred in filing said motions. For reasons stated below, the Court will deny Plaintiff's motion, grant Defendants' motion and order specific performance of the insurance provision of the settlement agreement. The Court will deny the parties' motions for sanctions.

I.

This action arises from a dispute over the demolition of the former Philip Morris Maple Street plant, located at Dixie Highway and Broadway, in Louisville, Kentucky. Newbridge is the owner of the property and contracted with TMG to provide labor and materials for the demolition. Newbridge and TMG are Kentucky corporations. TMG subcontracted with EDS, a limited partnership organized in England, for the removal of concrete waste from the site.

In the complaint, EDS alleges breach of the subcontract, "equitable adjustment against

TMG," unjust enrichment against Newbridge, and enforcement of mechanics' and materialman's lien.[1] EDS alleges damages exceeding $1.1 million for TMG's failure to pay all amounts due under the subcontract for extra services EDS performed. In turn, Defendants deny all liability and assert counterclaims for breach of warranty, abuse of process, tortious interference with contractual relations, and slander of title. Defendants allege EDS is in breach of the subcontract for its failure to complete the demolition and for spoilation of hard fill, crush material. In addition to other relief, TMG claims EDS owes liquidated damages at the rate of $1,000 per day after February, 10, 2008.

Three months after the commencement of this lawsuit, on March 18, 2009, United States Magistrate Judge James D. Moyer conducted a settlement conference. The parties' conference statements reveal numerous points of contention. One of the main disputes addressed during the conference concerned a change in EDS's work. Under the subcontract, all demolition materials were to be taken off site to one of two named crushing facilities, where it could be sold by TMG for use as a fill material. According to EDS, when the receiving sites refused to receive the material at some point during the project, EDS began to perform the extra work of crushing demolition materials on-site at significant additional expense. According to Defendants, EDS was unable to complete the work by February 10, 2008, and, ultimately, a third party completed the demolition.

In an Order dated March 27, 2009, the magistrate judge reported that the parties were able to reach an agreement for the resolution of all claims. Their agreement is memorialized in a

---

[1]Compl. at p. 5.

six-page document titled, Mutual Release and Settlement Agreement (hereinafter "Agreement").[2]
Under the Agreement, Newbridge and TMG promise to pay EDS $275,000, and all parties agree
to release liens, bonds, and claims.[3] The provisions at issue in the pending motions state as
follows:

> 4. **Requirement to Maintain Insurance by EDS.** EDS agrees to have issued an insurance rider providing for the same coverage as was provided by the insurance EDS originally had in place on the Project. The rider will remain in place until the rock/fill on the Property has been removed or until the Closing, whichever is first to occur.
>
> 5. **Formal Closing to Finalize the Settlement.** The parties agree to hold a formal closing ("Closing") to finalize this Settlement and all matters in this case. The Closing shall occur as soon as practicable, but in no event later than June 15, 2009.
>
> 11. **Agreed Order Dismissing Complaint and Counterclaims.** At the Closing and upon receipt of the Settlement Payment, the parties agree to sign and file an Agreed Order dismissing the Complaint and Counterclaims asserted in the Civil Action, with prejudice.

In April 2009, the parties informally exchanged the documentation under the Agreement rather than attend a formal closing. What transpired during this time is not in any material way a matter of dispute. The parties' dealings are reflected in counsel's correspondence. An EDS representative signed the Agreement on April 21, 2009. Newbridge and TMG representatives signed the Agreement on April 27, 2009. In an e-mail dated, April 28, 2009, counsel for Defendants inquired about the manner of payment and asked whether EDS had proof of the insurance rider. On the same date, counsel for EDS responded, "My client was obtaining

---

[2]The "Mutual Release and Settlement Agreement" is attached to the Motion to Dismiss All Claims Based on the Settlement by the Parties ("Motion to Dismiss") (DN 17).

[3]Mutual Release and Settlement Agreement at ¶ ¶ 4, 5, 11 .

insurance and I have asked my client to provide documentation of such insurance. I will forward it upon receipt."[4] On April 30, 2009, the parties exchanged the settlement checks and the original construction bond, but unbeknownst to defense counsel, EDS did not obtain the insurance rider.[5] On May 18, 2009, counsel for EDS advised no insurance documentation would be forwarded because the issue was moot.[6] EDS maintains the same position today in its motion papers.

To date, EDS has not obtained an insurance rider pursuant to ¶ 4 of the Agreement, and without it, Defendants Newbridge and TMG have refused to sign an agreed order dismissing the action pursuant to ¶ 11 of the Agreement.

**II.**

The Agreement contains a choice of law provision which states that the Agreement shall be governed, interpreted, and enforced in accordance with Kentucky law.[7] In Kentucky, a settlement agreement is a type of contract and is, therefore, governed by the rules of contract interpretation. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440 (Ky. 2005); *Frear v. P.T.A. Industries*, 103 S.W.3d 99, 105 (Ky. 2003). "The primary objective is to effectuate the intentions of the parties." *3D Enterprises*, 174 S.W.3d at 448. If the contract terms are plain and unambiguous, the court need only look within the four corners of the document to determine the parties' intentions. *Id.* "Generally, the

---

[4]Newbridge Development, LLC and the Mardrian Group, Inc.'s Response in Opposition to Motion to Dismiss Claims and Memorandum in Support of Counter-Motion to Enforce Settlement Agreement, (hereinafter "Mot. to Enforce Sett. Agreement") (DN 19) at 3.

[5]Ex. B, April 28, 2009, Mot. to Enforce Sett. Agreement.

[6]Ex. C, May 18, 2009, Mot. to Enforce Sett. Agreement.

[7]Mutual Release and Settlement Agreement at ¶ 14.

interpretation of a contract, including determining whether a contract is ambiguous, is a question of law ... ." *Id.* The Court also observes, in its review of the Agreement at hand, that the parties have integrated their entire settlement in the six-page document, pursuant to ¶ 13 of the Agreement.

**III.**

EDS moves to enforce ¶ 11 of the Agreement, requiring dismissal of this action as settled. All claims have been fully released, including the mechanics' lien and lis pendens, EDS argues, and nothing is left for the Court to adjudicate. EDS contends TMG's and Newbridge's refusal to sign the dismissal papers is directly contrary to the plain language of the Agreement and the magistrate judge's order reporting a settlement. In support, EDS cites to *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280 (6th Cir. 1986), for the sound proposition that the Court has the inherent power to enforce settlement agreements.

In EDS's view, its failure to perform under ¶ 4 of the Agreement is no basis for Defendants' refusal to sign an agreed order dismissing. EDS claims the Agreement no longer requires it to obtain insurance because of the sequence of events surrounding the settlement. TMG and Newbridge "pushed for a quick closing," which, according to EDS, occurred on April 30, 2009, three days after Defendants signed the Agreement. Because the closing occurred before the insurance rider could be put in place, and certainly before the rock/fill had been removed, the insurance provision by its terms, EDS argues, became moot.

In their cross motion to enforce the Agreement, Defendants argue that the Court should not dismiss the action until EDS complies with ¶ 4. Defendants claim EDS's failure to obtain an insurance rider is a breach of the plain terms of the Agreement and the duty of good faith and fair

5

dealing, an implied covenant in every contract in Kentucky, *Farmers Banks and Trust Co., v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).

Defendants explain that under the original construction agreement, EDS was required to insure Newbridge's property while EDS was working on the site. When EDS stopped working on the property, EDS allowed the insurance to lapse.[8] As a part of the negotiated settlement terms, Defendants required EDS to reinstate the insurance coverage. Defendants request that the Court order EDS to obtain an insurance rider on the property, for the period March 18, 2009 to April 30, 2009, providing the same coverage as the insurance EDS originally had in place; or if EDS fails to comply within ten days, that the Court order EDS to return the settlement money and proceed in litigation.

The Court finds that ¶ 4 clearly and unambiguously requires EDS to obtain an insurance rider. The Court disagrees that the April 30th closing rendered moot EDS's obligation to obtain an insurance rider, which ¶ 4 describes as "insurance EDS originally had in place." The language that "the rider will remain in place ... until the closing" speaks to the policy period, or the end date, rather than a contingency. The only logical reading of the provision is that Newbridge is entitled to the "insurance EDS originally had in place" through the period ending on the date of closing or removal of rock/fill, whichever occurs first. The Agreement clearly expresses the parties' intention that as part of their settlement, insurance coverage would be extended beyond its lapse.

Nevertheless, EDS objects to the enforcement of ¶ 4 on additional grounds. First, EDS argues that the proper relief for breach of a settlement agreement is in a separate action, if and

---

[8]Mot. to Enforce Sett. Agreement at 2.

when Defendants are harmed by the lack of insurance coverage. EDS cites to federal case law, *e.g., Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 365, 381-82 (1994), in which the parties failed to specifically agree that the court would retain jurisdiction over the settlement. In *Kokkonen*, the Supreme Court of the United States held that in a subsequent action, the federal courts must have an independent basis for subject-matter jurisdiction in order to enforce the parties' settlement agreements. *Id.*

There is no jurisdictional hurdle, however, when, as here, a party seeks enforcement of a settlement agreement while the action remains pending. The requirement that the settlement agreement must contain a provision retaining federal jurisdiction is pertinent only if the underlying action has been dismissed. *Id.; see also Aro Corp v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.") Moreover, EDS's jurisdictional objection is inconsistent with its primary argument that it is entitled to enforcement of ¶ 11's dismissal provision. The Court concludes the present basis for subject matter jurisdiction applies with equal force to the current motions to enforce the various provisions of the Agreement.

Second, EDS argues Defendants have waived the right to an insurance rider or are estopped from enforcing ¶ 4 because Defendants chose to exchange the settlement funds and other documentation and to forego documentation of the insurance rider. The Court disagrees. Kentucky law defines waiver as "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Greathouse v. Shreve*, Ky., 891 S.W.2d 387, 390 (1995); *Weis Builders, Inc. v. Complete Contracting, Inc.*, 247 S.W.3d 542 (Ky. App. 2008). There is no

7

dispute that counsel for EDS represented on April 28th that his "client was obtaining insurance" and that the documentation would be forwarded upon receipt.[9] Only later, after Defendants tendered the settlement check did counsel for EDS reply that it would not provide such insurance documentation.[10] Thus, EDS cannot show Defendants knowingly relinquished the right to the insurance rider. Thus, waiver is not a valid basis for EDS's nonperformance under ¶ 4.

Third, EDS objects that the purchase of retroactive insurance is nonsensical, and suggests that the purchase may not be possible. EDS argues the proposed insurance would not provide coverage because EDS was not on-site for the relevant time period, March 18 through April 30, 2009, and that the original insurance is sufficient protection against potential claims. EDS attaches a commercial general liability policy in support of its coverage argument; however, EDS offers no evidentiary support that the purchase of an insurance rider as negotiated is actually impossible.

Defendants dispute EDS's view of coverage and counter that no matter how remote a claim may be, if EDS is permitted to shirk its agreement to obtain the requested insurance, Newbridge carries the risk rather than EDS. The Court agrees. As an integrated Agreement, a party who seeks to modify any right or duty under the Agreement may do so only with the parties' written consent.[11] Essentially, EDS raises argument that may be more appropriate during negotiations; but once it explicitly promises to perform, EDS's view that the agreement merely provides remote, speculative protection does not negate the obligation to obtain the insurance

---

[9]Ex. B, e-mail, April 28, 2009, Mot. to Enforce Sett. Agreement.

[10]Ex. C, e-mail, May 18, 2009, Mot. to Enforce Sett. Agreement.

[11]Mutual Release and Settlement Agreement at ¶ 13.

rider. "In the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Frear*, 103 S.W.3d at 106 (quoting *O'Bryan v. Massey Ferguson, Inc.*, Ky., 413 S.W2d 891,893 (1966)) (internal quotations omitted). To excuse EDS's performance on this basis would not effectuate the intentions of the parties under ¶ 4 of the Agreement.

Finally, EDS objects that any damages for its failure to comply with ¶ 4 are speculative, and argues that Defendants' claim is not only not ripe, it is nonexistent. Again, the Court respectfully disagrees. The remedy Defendants have elected is an equitable rather than a legal one. A suit for damages is not an exclusive remedy in this instance. Specific enforcement is a particularly appropriate remedy in the enforcement of a settlement agreement, which should be upheld whenever equitable and policy considerations so permit. *See Aro Corp.*, 531 F.2d at 1372. This Court has the power to summarily enforce settlement agreements when no substantial factual dispute exists. *See id.* The law supports, and the equities favor, Defendants' motion to enforce over EDS's motion to dismiss.

Accordingly, the Court will enter an order enforcing EDS's agreement to obtain an insurance rider under the Agreement.

Each party seeks an award of its costs and attorney's fees in preparing the pending motions. As a general rule, parties bear their own attorney fees. *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986)*; AIK Selective Self-Insurance Fund v. Minton*, 192 S.W.3d 415, 420 (Ky. 2006). A district court may award attorney fees in its discretion for willful violation of a court order, bad faith, or oppressive litigation practices. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 275 (1975). The Court concludes neither party has displayed conduct rising to the level of sanctionable conduct and that neither party is entitled to an award

of costs attorney's fees.

The Court will enter a separate order consistent with this Opinion.

DATE:

Copies to counsel